**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

v.

NYGEE JAMAL TAYLOR,

      Defendant.

CASE NO. 3:13-CR-94

(JUDGE CAPUTO)

## MEMORANDUM

Defendant Nygee Jamal Taylor, a felon, seeks to suppress incriminating statements he made to law enforcement concerning the possession of a firearm. Presently before the Court is Defendant's Motion to Suppress Statements (Doc. 19). The Court held a Suppression Hearing on Defendant's motion on May 5, 2014. Because Defendant was subject to a custodial interrogation on December 5, 2012, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

The facts developed at a hearing on the issue are these. The Defendant was shot in the vicinity of the Sherman Hills Apartment Complex in Wilkes-Barre, Pennsylvania, on November 29, 2012, at about 6:30 in the evening.  He was taken to Geisinger Wyoming Valley Medical Center with gunshot wounds to both legs and the groin.  The Wilkes-Barre Police investigated the scene, and at the scene discovered ten (10) 45 calibre shell casings, three (3) 22 calibre shell casings, one (1) 22 calibre live bullet, a 22 calibre pistol, a cell phone, and a "pool of blood" in which the 22 calibre pistol was located.

Shortly after these discoveries, two Wilkes-Barre Police Detectives, Elick and

Simonetti, went to Geisinger Wyoming Valley Medical Center to talk to Defendant.  They were dressed in plain clothes, but had their badges and firearms.  Detective Elick testified that the medical staff advised him that Defendant was going to undergo surgery; that he could talk to Defendant; but to be brief.  Detective Elick testified that he identified himself to Defendant, did not give him a Miranda Warning, and asked him if he knew the identity of the person who shot him.  He further testified that Defendant told him the shooter was a man named "Hollywood", and that he was walking in Sherman Hills and a "gun fight ensued".[1]

Defendant was released from the hospital after surgery on December 4, 2012. He went to 132 South Wells Street in Wilkes-Barre, a home occupied by Millagros Rivera and her two children.  On December 5, 2012, Detective Elick, along with a Luzerne County Detective, Christopher Lynch, went to the Wells Street residence to talk further with Defendant.  Detectives Elick and Lynch were allowed entry and were taken to Defendant, who was immobile, in bed convalescing.  They identified themselves, were in plain clothes, and had badges and firearms.  They did not give Defendant a Miranda Warning.  Detective Elick testified that he asked again about the identity of the person who shot Defendant, and Defendant said he did not know his name or face, but that he had a pea coat on, a red shirt, and gray sweat pants; that he was black; had a medium build, and was about 5'10".  He also testified that Defendant told him there was a second gunman who appeared at the scene.  There was no testimony as to whether the second gunman fired any shots.  At this point, Detective Elick told Defendant there was a second gun recovered at the scene; that it was in a pool of blood; and asked whether this gun would have Defendant's prints on it; and that Defendant said it would.  Detective Elick further testified that Defendant said the gun was in his coat; he took it out and fired

---

[1]       Verbatim testimony of Detective Elick.

it; that it was a Jennings 22 calibre automatic; and, that he did not believe it was stolen. He also said the person who shot him was "Hollywood", and that he and Hollywood were members of the Bloods; and that a "hit" was ordered on Defendant.

**DISCUSSION**

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.  In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Supreme Court held that statements obtained during a custodial interrogation where a person was not informed of his right to counsel or his right to remain silent were obtained in violation of the Fifth Amendment and were, therefore, inadmissible.  *Id.* at 477–79.  Statements elicited during a custodial interrogation are admissible only if a person voluntarily, knowingly and intelligently waives his rights.  *Id.* at 444, 475.

The parties agree that *Miranda* requires warnings only for custodial interrogation by law enforcement officers.  "For a person to be in custody when he has not been arrested, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so."  *U.S. v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006)(citing *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir.1974)).  "In cases where a person is restrained for reasons unrelated to police conduct, 'the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *United States v. Overington*, No. 07-147, 2007 WL 3119843 (E.D. Pa. Oct. 24, 2007) (citing *Florida v. Bostick,* 501 U.S. 429, 436, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)).

In *Willaman,* the Third Circuit stated that "[c]ourts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. " *Willaman*, 437 F.3d at 359-60.  This list of factors is not exhaustive. Another relevant factor courts have considered is "whether the officer revealed his or her belief that the suspect was guilty." *United States v. Jacobs*, 431 F.3d 99, 105 (3d Cir. 2005).  Considering the circumstances surrounding the interrogation, the ultimate inquiry is "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994) (citations omitted).

## A.     November 29, 2012

In determining whether the November 29 interrogation was custodial, the Court first looks to the factors described in *Willaman*.  As to the first factor, there was no testimony that Defendant was told that he was not under arrest or free to terminate the encounter, which weighs in favor of a finding the interview was custodial.  Second, the interrogation took place at Geisinger Wyoming Valley Medical Center, shortly before Defendant was to undergo extensive surgery.  Hospitals are generally considered to be a less coercive environment than a police station.  *See, e.g. United States v. Overington*, No. 07-147, 2007 WL 3119843, at *4 (E.D. Pa. Oct. 24, 2007).  However, given his condition, Mr. Taylor was not free to leave.  Third, the questioning was brief in this case as Defendant was in severe pain and about to undergo surgery.  The brief duration of the interview weighs against finding that the interview was custodial.  *See id.* ("The brief

duration clearly favors a finding that the interview was not custodial."). Fourth, there was no testimony that Detectives Elick and Simonetti used coercive tactics during this encounter. They were dressed in plain clothes, although they were carrying badges and guns. This factor weighs against a finding the interview was custodial. Fifth, the testimony suggests that Defendant did submit voluntarily to questioning, although it is arguable this was tempered by his environment and physical condition.

Therefore, analysis of the *Willaman* factors suggests that Defendant was not subject to a custodial interrogation on November 29, 2014. It is possible that Defendant was viewed as a suspect at the time of the November 29 interview. It is clear that when Detective Elick went to interview Defendant at the hospital on November 29, 2012, he knew there were two different hand guns discharged at the scene and that the Defendant had been shot. Indeed, he testified he was told by Defendant there was a gun fight. Of importance is that when Detectives Elick and Simonetti went to the hospital they knew there were two weapons discharged at the scene. It is difficult to believe Defendant was not a suspect of some crime when they went to interview him at the hospital. But even assuming that he was not a suspect at that point, he became one when they discovered between November 29 and December 5 that Defendant was a felon. Law enforcement was then aware that if the Defendant possessed or fired a weapon, he was, at the very least, a felon in possession of a firearm. Therefore, it is clear to me that if he was not a suspect of a crime on November 29, he was on December 5, 2012.

**B.    December 5, 2012**

That Defendant was a suspect of a crime at the outset of the December 5 interview weighs in favor of suppression. The Supreme Court has explained, "[a]n officer's knowledge or beliefs [about a suspect's guilt] may bear upon the custody issue

if they are conveyed, by word or deed, to the individual being questioned." *Stansbury v. California*, 511 U.S. 318, 325, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994).  The relevant question is whether the officer's manifestation of suspicion "would have affected how a reasonable person in that position would perceive his or her freedom to leave." *Id.* Detective Elick manifested his suspicion of Defendant's guilt when he told Defendant that a gun had been recovered at the scene in a pool of blood right where Defendant had been laying, and asked him whether the gun would have his prints on it.  Detective Elick's questioning at this point was confrontational, and a reasonable person in Defendant 's position may not have felt that he could terminate the encounter.

Looking to the *Willaman* factors, there was no testimony that Defendant was specifically told that he was not under arrest or that he was free to terminate the encounter.  Thus the first factor weighs in favor of suppression.  As to the second factor, the December 5 interview took place at Millagros Rivera's house, which both parties view as Defendant's "home" at the time.  The United States Court of Appeals for the Third Circuit has "cautioned that 'the mere presence of the police at the subject's home cannot be equated, per se, with the deprivation of significant freedom of action with which the Court in *Miranda* dealt.'" *United States v. Lavalle*, No. 06-cr-90-03, 2006 WL 1455727, at *8 (M.D. Pa. May 25, 2006)(quoting *Virgin Islands v. Berne*, 412 F.2d 1055, 1059-1060 (3d Cir.1969)).  With respect to the location of interrogation, the Supreme Court explained in *Miranda* that:

> In his own home [the suspect] may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions of criminal behavior within the walls of his home. Moreover his family and other friends are nearby, their presence lending moral support. In his office, the investigator possesses all the advantages. The atmosphere suggests the invincibility of the forces of the law.

*Miranda v. Arizona*, 384 U.S. 436, 449-50, 86 S. Ct. 1602, 1615, 16 L. Ed. 2d 694 (1966).  In this case, although the interrogation took place at Defendant's home, it

6

appears that Defendant lacked many of the above "advantages." At the time of questioning, Defendant was laying down in the upstairs bedroom experiencing severe pain and was unable to move for the duration of the questioning. The testimony does not reveal that Defendant was "confident, indignant, or recalcitrant" or that he was aware of his rights and "reluctant to tell of his indiscretions." *Id.* In addition, his family and friends were not present in the room to offer moral support. Therefore, while a suspect is generally not in custody in his own home, the circumstances surrounding the interrogation at Defendant's home in this case differ from those mentioned in *Miranda*. At best this factor is neutral.

As to the third factor, the December 5 interview was relatively short in duration, lasting approximately fifteen minutes. While this factor weighs against suppression, its importance is diminished by the fact that Defendant had undergone a lengthy surgery less than a week prior to the interview and he was experiencing severe pain at the time. Fourth, it does not appear that the officers used particularly coercive tactics in questioning Defendant, although they did display their badges and guns and did ask Defendant confrontational questions. As to the fifth factor, whether Defendant voluntarily submitted to questioning, the Detectives were allowed entry to the Wells Street residence and Defendant answered the Detectives' questions. This factor weighs against suppression.

This case does not fit nicely with the *Willaman* factors. It is important to note those factors are not exclusive. Here the circumstances viz the Defendant's immobility, his post-surgical state, the failure to advise him that he could terminate the interview, and that the so called "comfort of home" was not extant, all must be considered in the determination of whether the December 5 interview was custodial. In addition, the fact that the Defendant appeared to be a suspect cannot be discounted.

Considering that Defendant was immobile and could not leave if he wanted to during the December 5 interview, that a focus of the interview was to identify Defendant with the 22 calibre pistol, and that the Detectives indicated their suspicion of Defendant

during the interview, I find the interview was custodial.  As such, Defendant should have been given a *Miranda* Warning.  To fail to do so is fatal to the matters discovered in the interview, and therefore the Defendant's incriminating statements from December 5 will be suppressed.

## CONCLUSION

Because Defendant was a suspect of a crime on December 5, 2012 and was subject to a custodial interrogation on this occasion, Defendant's motion to suppress statements will be granted in part and denied in part.

An appropriate order follows.


May 16, 2014                                                /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                               United States District Judge